IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TRANS ENERGY, INC.,
a Nevada corporation,
PRIMA OIL COMPANY, INC.,
a Delaware corporation and
REPUBLIC PARTNERS VI, LP,
a Texas limited partnership,

     Plaintiffs,

v.                                                Civil Action No. 5:13CV93
                                                                    (STAMP)
EQT PRODUCTION COMPANY,
a Pennsylvania corporation,

     Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS
AND GRANTING DEFENDANT'S MOTION TO STAY AS FRAMED**

I.   Procedural History

The plaintiffs, Trans Energy, Inc., Prima Oil Company, Inc., and Republic Partners VI, LP ("the plaintiffs"), filed a complaint in this Court based on diversity jurisdiction.  The plaintiffs are seeking a declaratory judgment, based on several sub-claims, that they are the rightful title holders to an oil and gas lease that covers land located in Wetzel County, West Virginia and thus are entitled to a quiet title declaration.  In the alternative, the plaintiffs seek a declaration that they are the rightful title holders based on a claim of adverse possession.  The lease in question is an 1892 lease executed by L.H. and J.S. Robinson (the "Robinson Lease").

These same plaintiffs, and the defendant in this case, EQT Production Company ("EQT"), were involved in a prior action in this Court, Trans Energy Inc. et al. v. EQT Production Co., No. 1:11CV75 (N.D. W. Va. 2011) ("Blackshere Lease action"). That action also involved an additional plaintiff, Republic Energy Ventures, LLC ("REV"). That case arose from the parties' competing claims of interest in the gas rights of a 3,800 acre plot of land located in Wetzel and Doddridge Counties, West Virginia ("Blackshere Lease"). This Court granted summary judgment to the plaintiffs based on a finding that Prima Oil Company, Inc. ("Prima") was a bona fide purchaser of the Blackshere Lease and that it was the rightful owner of both the oil and gas rights related to the Blackshere Lease. EQT then appealed that judgment to the United States Court of Appeals for the Fourth Circuit. A final disposition has not been entered.[1]

Subsequently, EQT filed a declaratory judgment action in the Circuit Court of Wetzel County, West Virginia, that seeks a

---

[1]Trans Energy Inc. et al. v. EQT Production Co., No. 12-2553 (4th Cir.). Oral argument was heard by the Fourth Circuit on December 12, 2013 in which EQT argued that (1) this Court lacked diversity jurisdiction because REV was not a diverse party; (2) this Court's finding of summary judgment in favor of the plaintiffs should be reversed and summary judgment should be found in favor of EQT; and (3) this Court's finding of summary judgment in favor of the plaintiffs should be set aside and the Fourth Circuit should remand to this Court for further proceedings (all arguments were argued in the alternative to each other). See http://coop.ca4.uscourts.gov/OAarchive/mp3/12-2553-20131212.mp3 (Retrieved on January 15, 2014).

2

declaration of the rightful title holder to the Robinson Lease ("the state court action").  The defendants in that action are the four plaintiffs from the Blackshere Lease action in this Court. The three plaintiffs then filed the instant action in this Court, seeking declaratory judgment of the rights of the parties to the Robinson Lease at issue in the state court action.

Thereafter, EQT filed a motion to dismiss claiming that because of the ongoing parallel state action, this Court should abstain from hearing this action.  Later, EQT filed a motion to stay based on similar arguments.

## II.   Facts

### A.   Motion to Dismiss

The defendant has made three arguments in its motion to dismiss: (1) that this Court should abstain from hearing this action pursuant to the factors set forth in Nautilus;[2] (2) the plaintiffs are judicially estopped from omitting an indispensable party, REV, that would destroy complete diversity among the plaintiffs and EQT; and (3) if this Court does not abstain, subject matter jurisdiction will ultimately be destroyed because EQT will join REV as a party and thereafter realign the parties, destroying diversity in this action.

---

[2]Nautilus Ins. Co. v. Winchester Homes, 15 F.3d 371 (4th Cir. 1994).

In their response, the plaintiffs make two main arguments: (1) REV is neither an indispensable party nor a necessary party under Federal Rule of Civil Procedure 19; and (2) this Court must apply the <u>Colorado River</u>[3] factors rather than the <u>Nautilus</u> factors to determine whether it should abstain, and, further, this Court should abstain under either set of factors.

In its reply, the defendant argues that the <u>Nautilus</u> factors should be applied to all of the plaintiffs' claims except the adverse possession claim.  The defendant contends that as to the adverse possession claim, this Court could retain jurisdiction or abstain from hearing the adverse possession claim under the <u>Colorado River</u> factors.  Further, the defendant contends that as to its argument pertaining to REV, it was merely asserting that REV *can* be joined and that the plaintiffs should be judicially estopped from claiming that REV cannot be joined to this action.

B.   <u>Motion to Stay</u>

The defendant makes the following arguments in its motion to stay: (1) substantive proceedings are already underway in the state court action where EQT has already filed a dispositive motion (a motion for partial summary judgment) and the plaintiffs have admitted material facts, unlike the current action in this Court; (2) the plaintiffs deliberately omitted REV as a party in this

---

[3] <u>Colorado River Conservation Dist. v. United States</u>, 424 U.S. 800 (1976).

4

action in order to manufacture diversity; (3) if this Court does not grant the defendant's motion to dismiss, it will have to join REV as a third party and thus the parties will no longer meet the diversity requirement; and (4) because of (1)-(3), the three factors of <u>White v. Ally Financial Inc., et al.</u>, 2013 WL 164156, No. 2:12-CV-00384 (S.D. W. Va. Jan. 15, 2013), will be met.

The plaintiffs argue that EQT only filed the state court action in order to get around this Court's ruling in the Blackshere Lease action.  The plaintiffs contend that the same questions and issues that arose in the Blackshere Lease action are at issue in this case.  The plaintiffs also assert that there have not been substantive proceedings in the state court because: (1) EQT has not filed a motion for partial summary judgment; (2) the plaintiffs have not admitted that they were put on notice of a competing claim to the Robinson Lease and they timely objected to any and all discovery requests from EQT;[4] and (3) the plaintiffs assert that REV is neither a necessary nor indispensable party.  Further, the plaintiffs admit that their final assertion is currently being decided by the Fourth Circuit in the Blackshere Lease action. However, the plaintiffs argue that despite this Court's ability to

---

[4]The plaintiffs included an exhibit with their response.  The exhibit is a motion to reconsider the state court's order deeming the unanswered requests for discovery as admissions by the defendants.  ECF No. 27.  In this motion, filed in the Circuit Court of Wetzel County, West Virginia, the plaintiffs argue that they timely objected and thus did not make admissions.

enter a limited stay to await the Fourth Circuit's decision, EQT has still failed to show that the potential harm to the plaintiffs in having to defend themselves in the state court action would not be extremely harmful.

The plaintiffs go on to argue that the less stringent factors of <u>White</u> should not be applied, rather the <u>Colorado River</u> factors should be applied to the motion to stay because the motion is based on the existence of a parallel state court action.  The plaintiffs thus argue that EQT has not shown that there are "exceptional circumstances" necessary for a stay because: (1) the state court has not affirmatively exercised jurisdiction; (2) the federal forum and state forum are equally convenient; (3) this is simply parallel litigation and it is not the type of piecemeal litigation that warrants a stay; (4) no discovery has been had and the plaintiffs have objected to EQT's discovery-thus, the state court and this Court are both at an early stage in the litigation; and (5) although state law is applicable, this Court hearing the case would not create undue friction with the state courts.

In the alternative, the plaintiffs go through the <u>White</u> factors, arguing that: (1) this Court has the benefit of three years experience with the parties because of the Blackshere Lease action, thus judicial economy favors denying the motion; (2) EQT will not be burdened by moving forward in this Court because this Court will be able to efficiently decide this matter because of its

background with the Blackshere Lease action; and (3) a stay would prejudice the plaintiffs because they would have to continue litigating the issues that they have already litigated for over a year and a half in the Blackshere Lease action.

In its reply, the defendant reiterates the contentions it made in its motion to stay and in its motion to dismiss.  However, it indicates in its reply that it filed a motion for partial summary judgment on December 27, 2013, after it had filed the motion to stay in this Court.

### III.  Applicable Law

In cases involving a claim for equitable relief, federal courts may stay the action based on abstention principles, if applicable, but may also, "in appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court."  Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 721 (1996).  On the other hand, federal courts may not find that "those principles support the outright dismissal or remand of damages actions."  Id.

### IV.  Discussion

A.  Motion to Dismiss

The parties agree that as to the claims made under the Declaratory Judgment Act, the Nautilus factors are applicable. Further, the parties agree that as to the plaintiffs' adverse possession claim, the Colorado River doctrine is applicable.  The

parties disagree as to what standard should apply to the quiet title claim.  The defendant contends that the <u>Nautilus</u> factors are applicable whereas the plaintiffs argue that the <u>Colorado River</u> doctrine applies.

Regarding which standard applies to actions that involve both claims for declaratory judgment and claims for additional relief, the Fourth Circuit has stated that, while not expressing a definitive view on the issue, their "jurisprudence suggests that, in a 'mixed' complaint scenario the [declaratory judgment] standard does not apply, at least to the non-declaratory claims." <u>Great American Ins. Co. v. Gross</u>, 468 F.3d 199, 210 (4th Cir. 2006).

The right to quiet title or remove encumbrances upon personal property may arise under the Declaratory Judgment Act.  <u>See</u> 105 A.L.R. 291.  "Declaratory proceedings regarding the construction and interpretation of a written instrument, such as contracts, ordinances, statutes, wills, and trusts, are 'particularly appropriate' for remedy under the DJA." <u>Stone St. Asset Trust v. Blue</u>, 821 F. Supp. 2d 672, 676 (D. Del. 2011) (citing <u>Stern & Co. v. State Loan & Fin. Corp.</u>, 205 F. Supp. 702, 710 n.6 (D. Del. 1962) (citing <u>Motor Terminals v. Natl. Car Co.</u>, 92 F. Supp. 155, 161 (D. Del. 1949)); <u>see also</u> <u>Lehigh Coal & Nav. Co. v. Cent. R. of N.J.</u>, 33 F. Supp. 362, 365 (E.D. Pa. 1940).  While there is no on-point case law from any court in the Fourth Circuit analyzing whether a quiet title action falls under the Declaratory Judgment

Act, district courts in other circuits have found that a quiet title claim may qualify as a declaratory judgment claim. <u>Stone St. Asset Trust</u>, 821 F. Supp. 2d at 676; <u>Keiser Land Co., Inc. v. Naifeh</u>, 1:09-CV-1253, 2010 WL 3220642, *1 (W.D. Tenn. Aug. 13, 2010).

This Court finds that quiet title claims may not always qualify as a declaratory judgment claim, but that the quiet title claim in this action does.  The plaintiffs request in their complaint that this Court declare that the plaintiffs are entitled to quiet title of the Robinson Lease and that "there exist no adverse assignments or grants of record in the South Penn Oil Company chain of title that would put any third party purchaser on notice of a possible cloud to title." ECF No. 1 *7.  Thus, this is a case in which the plaintiffs' quiet title claim qualifies as a declaratory judgment claim rather than a non-declaratory judgment claim, such as quiet title for the purpose of ejectment.  <u>See Marthens v. B & O Railroad Co.</u>, 289 S.E.2d 706 n.2 (W. Va. 1982) (finding two types of quiet title claims, "the common law action of ejectment" and an "equitable bill either to quiet title or to remove a cloud . . . ."). The plaintiffs seek a declaration by this Court that no cloud or encumbrance exists as to the Robinson Lease and thus their quiet title claim qualifies as a declaratory judgment claim.  As such, the <u>Nautilus</u> factors will apply to the plaintiffs' quiet title claim.

1.   Application of the *Colorado River* Doctrine

The *Colorado River* doctrine permits federal courts to stay or dismiss claims over which the courts have federal question jurisdiction where pending parallel state proceedings raise the identical issues. *Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976). The *Colorado River* doctrine is not a doctrine of abstention, which is based upon the principles of federalism and comity for state relations; rather, it is a doctrine resting upon considerations of judicial economy and "wise judicial administration." *Id.* at 813. For this reason, courts should apply the *Colorado River* doctrine only in exceptional circumstances. *Id.* at 818.

The United States Court of Appeals for the Fourth Circuit has summarized the approach for applying the *Colorado River* doctrine:

> The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits. If parallel suits exist, then a district court must carefully balance several factors, with the balance heavily weighted in favor of the exercise of jurisdiction. Although the prescribed analysis is not a hard-and-fast one in which application of a checklist dictates the outcome, six factors have been identified to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. In the end, however, abstention should be the exception, not the rule, and it may be considered only

10

> when the parallel state-court litigation will be an
> adequate vehicle for the complete and prompt resolution
> of the issues between the parties.

Chase Brexton Health Services, Inc. v. Maryland, 411 F.3d 457, 463-64 (4th Cir. 2005) (internal quotations and citations omitted).

### a.   Parallel Proceedings

Following the Fourth Circuit's analysis in Chase Brexton, this Court must first determine whether the state and federal actions are sufficiently similar to constitute parallel proceedings before weighing the Colorado River factors to decide whether to dismiss the non-declaratory judgment claims.  "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."  New Beckley Mining Corp. v. International Union, United Mine Workers of America, 946 F.2d 1072, 1073 (4th Cir. 1991).  However, "suits need not be identical to be parallel, . . . and the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel."  AAR Int'l, Inc. v. Nimelias Enter. S.A., 250 F.3d 510, 518 (7th Cir. 2001) (internal citations omitted).  "The question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state litigation] will dispose of all claims presented in the federal case."  Id.

The state litigation involves a party, REV, that is not in this action.  However, both actions involve similar claims over the

11

rights to and the ownership of the Robinson Lease.  Thus, although the two suits are not formally symmetrical, there is a substantial likelihood that the state court action would dispose of all claims presented in this case.  As such, this Court finds that the state litigation does constitute a parallel proceeding and, therefore, the first requirement in applying the <u>Colorado River</u> doctrine is satisfied.

b.   <u>Application of the *Colorado River* Factors</u>

As this Court has now determined that the proceedings are sufficiently similar to constitute parallel proceedings, it must now determine whether the other factors weigh in favor of this Court abstaining and, thus, dismissing this action.  A decision declining to exercise jurisdiction over a federal action because of parallel litigation in state court "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  <u>Gannett Co., Inc. v. Clark Constr. Group, Inc.</u>, 286 F.3d 737, 744 (4th Cir. 2002) (quoting <u>Moses H. Cone v. Mercury Constr. Corp.</u>, 460 U.S. 1, 16 (1983)).

(1)   <u>Assumption of Jurisdiction Over the Property</u>

The defendant contends that this factor "militate[s] neither in favor nor against abstention."  ECF No. 19 *6.  However, where no property rights are at issue, this factor will weigh against abstention.  <u>See</u> <u>Gannett Co., Inc. v. Clark Const. Group, Inc.</u>, 286

F.3d 737, 747 (4th Cir. 2002) (finding that when both actions are in personam proceedings, this factor weighs against abstention). The defendant does not allege that the state court has taken jurisdiction over the property at issue.  The defendant only asserts that it has filed a declaratory judgment action in state court regarding ownership of the Robinson Lease.  Accordingly, this standard would be in favor of this Court maintaining jurisdiction because no property rights are at issue despite the fact that real property within the State of West Virginia is involved in the state litigation.  There has been no assumption of jurisdiction over the real property and thus this factor weighs against abstention.

(2)  Convenience of Forum

As to convenience of forum, the defendant again states that this factor does not weigh for or against abstention.  ECF No. 19 *6.  As the defendant makes no attempt to demonstrate that the federal forum is inconvenient, this factor weighs against abstention.

(3)  Piecemeal Litigation

The next factor to consider is the avoidance of piecemeal litigation.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Gannett Co., Inc., 286 F.3d 737 at 744.  However, the potential for conflicting outcomes, without more, is insufficient to warrant staying the exercise of federal

13

jurisdiction. <u>Chase Brexton</u>, 411 F.3d at 457 (quoting <u>Colorado River</u>, 424 U.S. at 816). Rather, the exercise of jurisdiction "must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly ill-suited for resolution in duplicate forums." <u>Gannett Co., Inc.</u>, 286 F.3d at 744.

The defendant cursorily argues that this factor would weigh in favor of abstention because retention of jurisdiction by this Court would produce piecemeal litigation with the Blackshere Lease action and the remaining claims pending in state court. Without more, it remains unclear to this Court how retention of this action would result in piecemeal litigation. The maintenance of the state court action and this action would not create the possibility of anything more than a potential for a conflicting outcome. Thus, without any other argument regarding this factor, this Court must find that this factor weighs against abstention.

(4) <u>Order of Jurisdiction and Progression</u>

The defendant argues that (1) the state court action includes all the plaintiffs in this action, and the plaintiff from the Blackshere Lease action, REV, and (2) was filed prior to the present action. However, relevant to this inquiry is not only the order in which the complaints were filed, but also how much progress has been made in the two actions. <u>See Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 22. The defendant also contends that it has

14

moved to transfer the action to the West Virginia Business Court; and it has served interrogatories, requests for production, and requests for admissions on the defendants in the state court action.

On the other hand, the plaintiffs argue that EQT overstates the progression of the state court action. The plaintiffs state that they have properly objected to EQT's service of discovery as improper in light of this suit and that no discovery has otherwise been had. Thus, the plaintiffs contend that because both suits are at an early stage, this factor does not favor abstention.

This Court will also consider the parties' arguments made in favor of and in opposition to the defendant's motion to stay at this point in the order because they could either support or go against abstention. EQT contends in that motion that it has filed a partial summary judgment motion and that the plaintiffs have made material admissions by failing to respond to the defendant's discovery requests. The plaintiffs argue that the defendant had not filed a partial summary judgment (at the time they filed their reply) and that the plaintiffs had filed a motion for reconsideration of the state court's finding that the plaintiffs had made material admissions because, as the plaintiffs argue, the plaintiffs had actually objected to the defendant's discovery requests.

This Court first notes that the defendant's assertion that it filed a partial summary judgment in its motion to stay was incorrect when it was first made.  Based on the defendant's own admissions, the partial summary judgment motion was not filed in the state court action until December 27, 2013 (after the motion to stay was filed and the reply to the motion was filed in opposition).

As to this factor, it does not appear that the state court action has had substantive proceedings.  First, the plaintiffs have objected to discovery requests.  Thus, the amount of discovery that the defendant contends has occurred is likely curtailed in state court at this time.  Further, because the partial summary judgment motion was recently filed, it will also likely take some time to be decided and is likely not fully briefed at this time.  Third, as to the defendant's assertion that the plaintiffs have made material admissions, that may also change because of the plaintiffs' pending motion for reconsideration.  Accordingly, this Court cannot find that this factor weighs in favor or against abstention because it appears that the progress that the defendant has provided to uphold this factor is either being questioned or is overstated.

   (5) <u>Rule of Decision on the Merits and the Adequacy of State Proceeding to Protect the Rights of the Parties</u>

As to the final two factors, EQT argues that both weigh in favor of abstention.  First, EQT argues that because the plaintiffs

are making claims regarding "wild" or "rogue" deeds, which run afoul of the law of West Virginia, the disposition of such cases should be left to the state courts of West Virginia.  Second, EQT argues that the state proceeding is adequate to protect the interests of all parties.  The plaintiffs contend that this factor does not favor abstention.  The plaintiffs argue that retention of jurisdiction would not create needless friction with important state policies.

"[T]he Supreme Court has made clear that the presence of state law and the adequacy of state proceedings can be used only in 'rare circumstances' to justify <u>Colorado River</u> abstention." <u>Gannett Co., Inc.</u>, 286 F.3d at 746 (quoting <u>Moses H. Cone</u>, 460 U.S. at 26).  The Fourth Circuit found that "these factors typically are designed to justify retention of jurisdiction where an important federal right is implicated and state proceedings may be inadequate to protect the federal right . . . or where retention of jurisdiction would create 'needless friction' with important state polices." <u>Id.</u> (citing <u>Moses H. Cone</u>, 460 U.S. at 26; and <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 717-18 (1996)).  Indeed, merely because state law is implicated "does not weigh in favor of abstention, particularly since both parties may find an adequate remedy in either state or federal court." <u>Id.</u> at 747 (internal quotations omitted).  The Fourth Circuit has further recognized that in diversity cases, "federal courts regularly grapple with questions

of state law, and abstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction." Id.

Although the defendant argues that West Virginia has not dealt with "wild" or "rogue" deeds, this Court ascertains a different understanding of the plaintiffs' claim made in their complaint. Although the plaintiffs use the terms "wild" or "rogue," they also couple the terms with the phrase "inasmuch as it purports to convey an interest to which it cannot trace title," followed by a cite to a West Virginia case. That case, Harper v. Pauley, 81 S.E.2d 728 (W. Va. 1953), stands for the notion that a deed may not stand if it is not descriptive enough for the purpose of identifying the land which it purports to convey. Thus, it appears that the plaintiffs are making an argument that title to the Hope deed cannot be traced and thus could not convey an interest.

This claim, along with the other claims made by the plaintiffs, are all claims with which a federal court can "grapple." This Court has dealt with several adverse possession claims, and has applied West Virginia law in regards to those claims in which West Virginia law was applicable. Accordingly, this Court is not required to abstain simply because there are claims in this action that would require the application of West Virginia law, and this factor does not weigh in favor of abstention. This Court can adequately apply the state law in question and can also adequately protect the rights of the parties

18

inasmuch as this Court has a background in applying West Virginia law to these types of claims.

    2.   <u>Application of the *Nautilus* Factors</u>

As an initial matter, under the Declaratory Judgment Act, 28 U.S.C. § 2201, federal courts are not required to hear declaratory judgment actions.  <u>See</u> <u>Nautilus</u>, 15 F.3d at 375.  Rather, a district court's decision to hear such a case is discretionary. <u>Id.</u>

Initially, the Fourth Circuit in <u>Mitcheson v. Harris</u>, 955 F.2d 235, 237-40 (4th Cir. 1992), indicated that when determining whether to entertain a declaratory judgment action, a district court should consider:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of overlapping issues of fact or law.

<u>Id.</u> (as cited in <u>Nautilus Ins. Co. v. Winchester Homes, Inc.</u>, 15 F.3d 371, 377 (4th Cir. 1994)).  Later, in <u>Nautilus</u>, the Fourth Circuit added that courts should also consider "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'–that is, 'to provide another forum in a race for res judicata' or 'to achieve a federal hearing in a case otherwise not removable.'"  15 F.3d at 377 (quoting 6A J. Moore, B.

Ward & J. Lucas, <u>Moore's Federal Practice</u>, ¶ 57.08[5] (2d ed. 1993)).

In <u>Chase Brexton</u>, however, the Fourth Circuit stated that when the non-declaratory judgment claims and the declaratory judgment claims are "so closely intertwined . . . judicial economy counsels against dismissing the claims for declaratory judgment while adjudicating the [other] claims" as "the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated."  411 F.3d at 466-67.

This Court finds that the claims are closely intertwined in this matter although the defendant argues that the quiet title claim and the adverse possession claim are inapposite of each other.  First, the claims arise from the same land in question. Second, and more importantly, in order to determine whether the adverse possession claim will require consideration because it is pled in the complaint as an alternative claim to the plaintiffs' quiet title and declaratory judgment claims, this Court must first determine whether the quiet title claim or the other declaratory claims are valid.  Thus, the plaintiffs' claims may rise or fall depending on any of their claims either under a quiet title argument, an adverse possession argument, or a declaratory judgment argument.  Thus, judicial economy surely counsels against staying or dismissing the declaratory judgment claims when the same land is at the crux of all the claims and the same evidence and discovery

will be required for all the claims.  However, this Court will also
consider the <u>Nautilus</u> factors, but finds that abstention would
still be unwarranted in this action as to the declaratory judgment
claims.

        a.   <u>State's Interest</u>

Again, the defendant makes the argument that the state's
interest is great because the plaintiffs make an argument as to
"wild" or "rogue" deeds in their complaint.  The plaintiffs contend
that this Court has already decided questions of law at issue in
this case because of this Court's involvement in the Blackshere
Lease action.

This Court has already stated that the plaintiffs' claims as
to "wild" or "rogue" deeds is not a valid argument for the state's
interest because it appears to merely be a poor choice of
terminology in the complaint on the plaintiffs' part.  This Court
also recognizes that the plaintiffs' contention that this Court has
already decided all of the questions of law at issue is also
misplaced.  There are issues that could arise in this action that
may not have arisen in the Blackshere Lease action because of the
different lease in question.  However, because the law at issue is
that which is settled state law and not controversial, the state
interest in trying this action as to the declaratory judgment
claims is no stronger than that of this Court.  Thus, this factor
weighs in favor of this Court maintaining jurisdiction.

b.   <u>Efficiency of Resolution</u>

At to this factor, the defendant argues that because REV (1) is not joined in this action, (2) is a party in the state court action, and (3) is an indispensable party, the state court would be able to more efficiently resolve the issues at stake.  Further, the defendant contends that it has moved to refer the state court action to the new Business Court Division in West Virginia which, it contends, would be more efficient because it is designed to handle complicated disputes between businesses and would be facilitated by two state court judges.   The plaintiffs, in contrast, argue that REV is not indispensable and is fully represented by Republic Partners VI, LP ("Republic") in this litigation.

Again, the defendant has stated that the motion to dismiss does not hinge on whether or not REV is an indispensable party.  Thus, this Court, as analyzed in the next section, will not decide that matter.  However, because REV is a party in the state court and is not a party in this Court, that may be a factor that would weigh in favor of abstention.  This is something that the Fourth Circuit is currently considering in the Blackshere Lease action.

As to the defendant's argument that the Business Court Division would be able to handle this action more efficiently than this Court, there is no evidence provided by the defendant of the correctness of those assertions.  Thus, it is not clear to this

22

Court that the new Business Court Division would be more efficient at handling this matter than this Court.

Accordingly, because neither of the defendant's argument are definitive at this point in time, this Court finds that this factor weighs neither in favor of nor against abstention as to the declaratory judgment claims.

           c.   Entanglement

The defendant contends that this factor weighs in favor of abstention because both the state court action and the instant action seek a declaration regarding the ownership of the Robinson Lease, and therefore the operative facts and controlling law are the same. The plaintiffs, on the other hand, argue that this Court can more expeditiously resolve the issues in this action because of its greater familiarity with them. Thus, because this Court has already resolved the legal issues that arise in this action, entanglement will not be avoided by this Court abstaining.

Again, both actions do have similar claims as to a declaration regarding the ownership of the Robinson Lease. However, this Court is familiar with the parties to this action and with the application of the bona fide purchaser law. Further, although some entanglement would result from this Court foregoing abstention, entanglement will result regardless of whether this Court were to dismiss the declaratory judgment claims. This Court has declined to abstain under the Colorado River doctrine and because identical

23

issues are involved in both categories of claims, entanglement
would result even without this Court deciding the declaratory
judgment claims because this Court could find that the plaintiffs
are entitled to title over the Robinson Lease based on adverse
possession. As such, whatever weight is in favor of abstention is
diminished by the fact that entanglement would occur regardless of
dismissal of the declaratory judgment claims.

### d. Procedural Fencing

Lastly, the defendant asserts that the plaintiffs have engaged
in procedural fencing by not joining REV to this action in order to
obtain diversity jurisdiction. Further, the defendant contends
that the plaintiffs are forum shopping because EQT filed its action
in state court first and not until then did the plaintiffs choose
to file in this Court. The plaintiffs, in contrast, argue that
they would not have joined REV, in the Blackshere Lease action, if
the jurisdictional problems had been identified earlier. Further,
the plaintiffs claim that EQT is actually the party forum shopping
because it filed the state court action knowing that this Court had
already decided the same legal issues in the Blackshere Lease
action.

It appears to this Court that both parties are jockeying for
position as to the claims in this action. On the one hand, the
plaintiffs brought the action in this Court without REV, who they
claim does not have an interest but who was joined in the case they

claim is almost identical, the Blackshere Lease action.  On the other hand, the defendant claims that the Fourth Circuit will ultimately find that REV was indispensable and thus, this Court did not have jurisdiction.  However, the defendant went on to file a state court action before the Fourth Circuit made a decision on that action and thus before an adverse ruling could be made against the defendant that could possibly affect its rights as to the Robinson Lease.  Accordingly, this Court finds that this factor neither weighs in favor nor against abstention.  Thus, taken as a whole, as stated previously, the <u>Nautilus</u> factors weigh in favor of this Court maintaining jurisdiction over the declaratory judgment claims.

### 3.   Joinder of Republic Energy Ventures, LLC

As to the parties' contentions over the joinder of REV as a party, this Court notes that the defendant has stated that its motion to dismiss is not based on the indispensability of REV or whether the joinder of REV would destroy subject matter jurisdiction.  ECF No. 19 *12.  Further, although the defendant attached a counterclaim and third-party complaint against REV, and also a motion to realign the parties, those attachments were filed as exhibits and were not filed as separate motions.  ECF Nos. 13-2, 13-3.  Accordingly, the Court will not consider those exhibits as a motion for joinder and a motion for realignment, respectively.  Further, as the defendant's estoppel argument deals with the same

subject matter, this Court declines to find, at this time, that the plaintiffs are judicially estopped from not joining REV as a party to this action.

B.   Motion to Stay

The defendant makes similar arguments in its motion to stay as in its motion to dismiss.  The main issue is whether or not the more liberal standard of White or the more stringent standard of the Colorado River doctrine applies.  The defendant contends that the Southern District of West Virginia's analysis in White is applicable whereas the plaintiffs argue that the Colorado River doctrine is applicable.

1.   Stay Based on the State Court Proceedings

Although the defendant argues that the motion to stay based on the parallel state court proceedings should be based on the analysis in White, a stay based on the state court proceedings would require the applicability of the Colorado River doctrine. White set out the analysis that should be applied to an action in which a party sought a stay because of a higher court's proceedings.  White, 2013 WL at *8 ("A district court ordinarily has discretion to delay proceedings when a higher court will issue a decision that may affect the outcome of the pending case.").  In White, the court was contemplating whether or not it should stay the case because of a ruling that was pending in the United States Supreme Court; there was no discussion of parallel state court

26

proceedings.  Id.  Thus, this Court finds that the Colorado River doctrine applies, and it will not grant a motion to stay based on the Colorado River doctrine for the same reasons as set out previously in this order for not granting the defendant's motion to dismiss.

      2.  Stay Based on the Proceedings in the Fourth Circuit

      The defendant has not asked for a stay of this action based on the proceedings pending in the Fourth Circuit.  On the other hand, the plaintiffs cursorily made the argument in their response to the motion to stay that this Court should not grant a motion to stay based on those proceedings because the defendant has not asked for a stay on those grounds nor has it provided any support for a stay on those grounds.  See ECF No. 26 *6.  This Court, however, may grant a stay sua sponte and, based on the following analysis, will do so.

      A district court possesses inherent power to stay, sua sponte, an action before it.  Crown Cent. Petroleum Corp. v. Dep't of Energy, 102 F.R.D. 95, 98-99 (D. Md. 1984) (citing Landis v. North American Co., 299 U.S. 248, 254-255 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control disposition of the causes on its docket . . . ."));  see also Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").  In exercising its

judgment, the court must weigh competing interests and consider the effects of the stay on the court's docket, on counsel, and on the litigants.  <u>Landis</u>, 299 U.S. at 254-255.  Further, the court must ensure that the stay is not "immoderate" and limit the scope of the stay within a reasonable time frame.  <u>Id.</u> at 257.

As stated previously, the plaintiffs, in opposition to the motion to stay, recognize that this Court has discretion to grant a limited stay but argue that real, legitimate harm will befall them if this Court grants a stay.  The plaintiffs argue that if this Court were to grant a motion to stay, the plaintiffs would be required to go forward with the state court action and have to continue protecting the validity of this Court's prior rulings in the Blackshere Lease action.

To the contrary, this Court finds that the plaintiffs will not be so prejudiced.  The Fourth Circuit has already heard oral argument from the parties and thus the appeal is likely close to a resolution.  Further, as stated previously, this Court finds that there have not been substantive proceedings in the state court action.  Thus, a limited stay in this action would not prejudice the plaintiffs as it appears that the Fourth Circuit will soon make a ruling on the Blackshere Lease action and the state court action is not near conclusion.  Additionally, the plaintiffs have been able to file a motion to dismiss, or in the alternative to stay,

the state court action, and thus have not been denied such opportunities in the state court action.  <u>See</u> ECF No. 13-1.

Additionally, because the Blackshere Lease action deals with a jurisdictional issue, whether or not REV is an indispensable party that would be crucial to this proceeding, it could prove to be futile for this Court to continue with the current action (especially given the defendant's attachments to its motion to dismiss).  If the Fourth Circuit were to overrule this Court's findings, or find that this Court lacked jurisdiction, any progress made in this action would be wasted.

Accordingly, this Court will sua sponte stay this action pending the outcome of the Fourth Circuit's decision in <u>Trans Energy Inc., et al. v. EQT Production Co.</u>, No. 12-2553 (4th Cir.).

V.  <u>Conclusion</u>

For the reasons stated above, the defendant's motion to dismiss is DENIED.  Further, the defendant's motion to stay is GRANTED AS FRAMED.  Accordingly, this action is STAYED pending a decision by the Fourth Circuit in <u>Trans Energy Inc., et al. v. EQT Production Co.</u>, No. 12-2553 (4th Cir.).  Finally, the parties are DIRECTED to inform this Court when the Blackshere Lease action has been resolved.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

29

DATED:    January 23, 2014


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE