IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TRANS ENERGY, INC.,
a Nevada corporation,
PRIMA OIL COMPANY, INC.,
a Delaware corporation, and
REPUBLIC PARTNERS VI, LP,
a Texas limited partnership,

      Plaintiffs,

v.                                                   Civil Action No. 5:13CV93
                                                                    (STAMP)

EQT PRODUCTION COMPANY,
a Pennsylvania corporation,

      Defendant.


MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO DISMISS FOR
LACK OF SUBJECT MATTER JURISDICTION AND
FAILURE TO JOIN AN INDISPENSABLE PARTY

      After conducting limited discovery to determine whether a non-diverse party is indispensable to this civil action, the defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (7) for lack of subject matter jurisdiction and failure to join an indispensable party. For the following reasons, the defendant's motion is denied.

I.   Procedural History

      The parties claim competing interests to the gas rights of a property known as the Robinson lease. The dispute arises from the plaintiffs' purchase of two oil and gas leases known as the Robinson and Blackshere leases from Cobham Gas Industries, Inc. ("Cobham"). ECF No. 1 at 3; Trans Energy, Inc. v. EQT Prod. Co.,

No. 1:11CV75, 2012 WL 5906649, *1 (N.D. W. Va. Nov. 26, 2012). The Robinson and Blackshere leases were initially conveyed to South Penn Oil Company ("South Penn") in 1892. South Penn entered into unrecorded indentures with Carnegie Natural Gas Company ("Carnegie") and Hope Natural Gas Company ("Hope") purporting to sever South Penn's natural gas and oil rights in the leases giving Carnegie the oil rights and Hope the gas rights. EQT was the successor in interest to Carnegie and Hope.

Pennzoil Products Company ("Pennzoil"), a successor entity of South Penn, assigned its rights in the Robinson and Blackshere leases to Cobham in 1996. The assignment was properly recorded. In 2004, Prima Oil Company ("Prima"), a wholly owned subsidiary of Trans Energy, Inc. ("Trans Energy"), acquired Cobham's interest in the leases through a properly recorded instrument. Trans Energy and Prima then entered into an agreement with Republic Partners VI, LP ("Republic Partners") to explore and develop a set of oil and gas leases, including the Blackshere and Robinson leases. In 2010, Republic Energy Ventures, LLC ("REV") replaced Republic Partners in that agreement.

In 2011, Trans Energy, Prima, Republic Partners, and REV filed suit against EQT, seeking declaratory judgment to resolve the parties' competing interests in the Blackshere Lease ("the Blackshere Litigation"). This Court granted summary judgment for the plaintiffs, finding that Prima was a bona fide purchaser of the

2

Blackshere Lease rights, thus, extinguishing EQT's interest in the lease. On appeal, EQT argued for the first time that REV was a non-diverse party and that this Court lacked subject matter jurisdiction. The United States Court of Appeals for the Fourth Circuit affirmed this Court's grant of summary judgment for the plaintiffs, but vacated the judgment with prejudice as to REV. Trans Energy, Inc. v. EQT Prod. Co., 743 F.3d 895, 907 (2014). The Court concluded that REV was a non-diverse but dispensable party, and dismissed REV to maintain subject matter jurisdiction. Id. at 901-02.

While the appeal was pending, EQT filed a civil action in West Virginia state court seeking declaratory judgment, asserting that it holds title to the Robinson lease. EQT named as defendants Trans Energy, Prima, Republic Partners, and REV. Trans Energy, Prima, and Republic Partners, but not REV, then filed this civil action seeking declaratory judgment, asserting that they hold title to the Robinson lease. EQT filed a motion to dismiss this civil action, arguing that this Court should abstain from exercising subject matter jurisdiction based on the parallel state court action. This Court denied EQT's motion to dismiss and stayed this action pending the Fourth Circuit's decision in the Blackshere Litigation.

After the Fourth Circuit affirmed this Court's decision in the Blackshere Litigation, EQT filed a motion to dismiss this civil

action for failure to join REV as an indispensable party.  This Court denied EQT's motion without prejudice and ordered limited discovery on the issue of whether REV is an indispensable party. The parties have now completed discovery, and EQT has filed a renewed motion to dismiss for lack of subject matter jurisdiction and for failure to join REV as an indispensable party.

## II. Facts

In 2007, the plaintiffs entered into an agreement entitled "Farm-Out and Area of Joint Development Agreement" ("AJDA").  Under the AJDA, Republic Partners would assist in the exploration and development of certain oil and gas leases held by Trans Energy and Prima ("the Subject Leases"), which included the Robinson and Blackshere leases.  ECF No. 106-3.  This arrangement was divided into two phases: exploration and development.  Id. at 2-4.  After completing work in each phase, Trans Energy and Prima would convey interests in the Subject Leases to Republic Partners.  Id. at 3.

Specifically, § 5(c) of the AJDA provided that upon the "completion of an exploration well by [Republic Partners]," Trans Energy would convey to Republic Partners a 50% working interest in the well and at least a 40% net revenue interest in the well.  Id. Section 6(a) provided that Republic Partners could then enter the "Development Phase," at which point Trans Energy would convey to Republic Partners a 50% working interest and a 40% net revenue interest in the remainder of Trans Energy's interests in the

Subject Leases.  Id.  In January 2009, after Republic Partners completed the exploration phase, Trans Energy conveyed to Republic Partners a 50% working interest and a 40% net revenue interest in all of the Subject Leases, including the Robinson and Blackshere leases.  ECF No. 104-4 at 1.

In 2010, Republic Partners and REV entered into a series of agreements providing that REV would replace Republic Partners in its operations under the AJDA.  The first of these agreements was a "Contribution Agreement" on July 15, 2010, summarizing Republic Partners and REV's intent to transfer certain of Republic Partners' assets and rights and obligations under the AJDA to REV in consideration of membership in REV, a limited liability company. ECF No. 104-5 at 4.  Section 1.1 provided that at closing, but effective April 1, 2010, Republic Partners would transfer the following to REV: (1) Republic Partners' interests in all Subject Leases excluding certain "Retained Assets" and certain "Option Assets;" (2) Republic Partners' rights and interests under the AJDA; and (3) Republic Partners' right to acquire overriding royalty interests in certain of the Subject Leases identified in Exhibit A-3 to the Contribution Agreement, which included the Robinson and Blackshere leases.  Id. at 4-6; ECF No. 106-8 at 23. Section 3.4 of the Contribution Agreement expressly identified the Robinson and Blackshere leases as "Option Assets" and provided that the leases were not subject to transfer under § 1.1 in recognition

of EQT's competing claim to title of those leases. ECF No. 104-5 at 12-13; ECF No. 106-8 at 40. Under § 3.4, Republic Partners granted an irrevocable option to REV to purchase Republic Partners' rights in the Robinson and Blackshere leases within one year of each lease's title being cleared. ECF No. 104-5 at 12; ECF No. 106-8 at 40. At that time, Republic Partners' only interest in the Robinson and Blackshere leases were the 50% working interests and 40% net revenue interests in each conveyed by Trans Energy in 2009. ECF No. 104-4 at 1.

On July 16, 2010, Republic Partners assigned all of its rights and delegated all of its obligations under the AJDA to REV "together with [Republic Partners'] interest in the acreage and other assets associated with [Republic Partners'] rights pursuant to such AJDA" ("the Assignment of the AJDA"). ECF No. 104-6. This document does not cross-reference the Contribution Agreement. On the same day and in recognition of the Assignment of the AJDA, the plaintiffs agreed to a fourth amendment to the AJDA, in which Trans Energy consented to Republic Partners' assignment and delegation to REV. ECF No. 104-7 at 1. Additionally, on the same day, Trans Energy conveyed to REV a 50% overriding royalty interest in certain of the Subject Leases, including the Robinson and Blackshere leases. ECF No. 106-12 at 1, 11.

On July 30, 2010, but effective April 1, 2010, Republic Partners and REV signed a closing agreement for the Contribution

Agreement and the Assignment of the AJDA ("the Closing Agreement").
ECF No. 106-15 at 1. The Closing Agreement was expressly made
subject to the terms of the Contribution Agreement and provided
that "[i]f there is a conflict between the terms of [the Closing]
Agreement and the terms of the Contribution Agreement, the terms of
the Contribution Agreement shall control." Id. at 5. In the
Closing Agreement, Republic Partners conveyed its interests in
certain of the Subject Leases identified in Exhibits A-1 and A-2 to
the Closing Agreement, neither of which included the Robinson or
Blackshere leases. Id. at 2. Republic Partners also conveyed its
right under the AJDA to acquire overriding royalty interests in
certain of the Subject Leases listed in Exhibits A-1 and A-3 to the
Closing Agreement, which included the Robinson and Blackshere
leases. Id. at 2, 32. Republic Partners expressly retained its
interests in the leases listed as "Retained Assets" and "Option
Assets" in the Contribution Agreement. Id. at 3. After the
Blackshere Litigation was resolved in the plaintiffs' favor, REV
exercised its option under the Contribution Agreement to acquire
Republic Partners' interests in the Blackshere Lease. See ECF No.
106-13.

III. Applicable Law

Federal Rule of Civil Procedure 19 establishes a two-step
inquiry to determine whether an action may continue without the
joinder of additional parties. Nat'l Union Fire Ins. Co. v. Rite

<u>Aid. of S.C., Inc.</u>, 210 F.3d 246, 249 (4th Cir. 2000). The Court must first determine whether the absent party is "necessary" to the action. Fed. R. Civ. P. 19(a). A party is "necessary" if in the party's absence, the court cannot accord complete relief among existing parties," or if the party claims an interest relating to the action and disposing of the action in the party's absence would "impair or impede the person's ability to protect the interest" or "leave an existing party subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). The court must join the necessary party if feasible. Fed. R. Civ. P. 19(a).

"[W]hen joinder of [the] part[y] is not feasible because of, among other things, nondiversity, a court must decide whether the action should proceed among the parties before it, or should be dismissed because the absent party is indispensable." <u>Trans Energy, Inc. v. EQT Prod. Co.</u>, 743 F.3d 895, 901 (4th Cir. 2014) (internal quotation marks omitted). To determine whether a party is indispensable, courts must consider: (1) "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties;" (2) "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided;" (3) "whether a judgment rendered in the person's absence will be adequate;" and (4) "whether the plaintiff will have an adequate

remedy if the action is dismissed for nonjoinder." Id. "Dismissal of a case is a drastic remedy, . . . which should be employed only sparingly." Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 918 (4th Cir. 1999). The party moving for dismissal under Federal Rule of Civil Procedure 12(b)(7) bears the burden of showing that an absent party is indispensable. 5C Charles Alan Wright, Arthur Miller & Edward H. Cooper, Federal Practice and Procedure § 1359 (3d. ed. 1998).

## IV. Discussion

It is undisputed that complete diversity exists between the plaintiffs and EQT. The parties also agree that REV is a necessary party under Rule 19(a), and that REV and EQT are both citizens of Pennsylvania such that joinder of REV is not feasible because diversity jurisdiction would be destroyed. Thus, the sole issue here is whether REV is indispensable to this civil action. EQT argues that REV is an indispensable party because (1) REV actually holds all of Republic Partners' interest in the Robinson lease, (2) REV was engaged in a partnership with the plaintiffs to develop oil and gas leases including the Robinson lease, and (3) REV and Republic Partners are alter egos. The plaintiffs argue that the Fourth Circuit's holding in the Blackshere Litigation regarding REV's dispensability has an issue preclusive effect here. To proceed, this Court must first unravel the transactions described

above and determine what interest REV actually holds in the Robinson lease.

A.  REV's Interest in the Robinson Lease

EQT argues that Republic Partners transferred to REV its working and net revenue interests in the Robinson lease, giving REV those interests along with an overriding royalty interest in the Robinson lease.  Specifically, EQT argues that Republic Partners assigned those interests to REV through the Contribution Agreement and through the Assignment of the AJDA.  The plaintiffs argue that REV has only an overriding royalty interest in the Robinson lease and a contingent option to acquire Republic Partners' interests in the lease.  This Court agrees.

At the time of the Contribution Agreement and the Assignment of the AJDA, Republic Partners held a 50% working interest and a 40% net revenue interest in the Robinson lease, which Trans Energy conveyed to Republic Partners in 2009.  ECF No. 104-4 at 1.  In the Contribution Agreement and the Closing Agreement, Republic Partners expressly did not transfer its interest in the Robinson and Blackshere leases to REV.  ECF No. 104-5 at 12; ECF No. 106-8 at 40; ECF No. 106-15 at 3.  Rather, Republic Partners expressly conveyed an option to purchase its interests in the Robinson and Blackshere leases within one year of title being cleared.  ECF No. 104-5 at 12.  Further, REV exercised its option to purchase Republic Partners' interests in the Blackshere lease after the

10

Blacksphere Litigation ended, ECF No. 106-13, indicating that Republic Partners and REV understood that Republic Partners' interests in the Robinson and Blacksphere leases had not been conveyed to REV through their various agreements. Thus, Republic Partners never conveyed to REV its working and net revenue interests in the Robinson lease.

This Court finds that the only interests REV holds in the Robinson lease are the 50% overriding royalty interest Trans Energy directly conveyed to it in 2010, and the option to acquire Republic Partners' 50% working interest and 40% net revenue interest in the Robinson lease within one year of title clearance, contingent upon title being cleared.

B.   <u>Issue Preclusion</u>

The plaintiffs argue that the Fourth Circuit's conclusion in the Blacksphere Litigation that REV was not indispensable to that litigation is binding in this civil action under the doctrine of <u>res judicata</u>.  Specifically, the plaintiffs argue that because REV held only an overriding royalty interest in both the Blacksphere and Robinson leases, the Fourth Circuit's conclusion that REV was not indispensable in the Blacksphere Litigation has an issue preclusive effect here.

Issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue

11

recurs in the context of a different claim." <u>Taylor v. Sturgell</u>, 553 U.S. 880, 892 (2008) (internal quotation marks omitted). For issue preclusion to apply, the proponent must demonstrate that: (1) "the issue or fact is identical to the one previously litigated;" (2) "the issue or fact was actually resolved in the prior proceeding;" (3) "the issue or fact was critical and necessary to the judgment in the prior proceeding;" (4) "the judgment in the prior proceeding is final and valid;" and (5) "the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding." <u>In re Microsoft Corp. Antitrust Litig.</u>, 355 F.3d 322, 326 (4th Cir. 2004).

In the Blackshere Litigation, the Fourth Circuit determined that REV was not an indispensable party based on its overriding royalty interest in the Blackshere lease. <u>Trans Energy</u>, 743 F.3d at 900-02. The Fourth Circuit's determination was critical and necessary to the judgment because a finding that REV was indispensable would have deprived the court of subject matter jurisdiction. <u>Id.</u> at 901. EQT had a full and fair opportunity to litigate the issue, as EQT actually argued on appeal that REV was indispensable. <u>Id.</u> at 900-01. The judgment is now final and valid. However, the factual and legal issues in these matters are not identical.

In the Blackshere Litigation, it was determined that Trans Energy and Prima transferred to REV "an overriding royalty interest in whatever production Republic Partners obtains from the [Blackshere] lease." Trans Energy, 743 F.3d at 899; see also Trans Energy, Inc., 2012 WL 5906649, *1, 4. The question before the Fourth Circuit in the Blackshere Litigation was whether REV was indispensable to those proceedings to determine title to the Blackshere lease. Trans Energy, 743 F.3d at 900-02. Here, the question is whether REV is indispensable to these proceedings to determine title to the Robinson lease. Even if both leases follow the same chain of title and involve the same agreements between the plaintiffs and REV, the fact that these civil actions deal with separate leases means that the factual and legal issues involved are not identical. Thus, issue preclusion does not apply to this Court's determination of whether REV is indispensable to this civil action. However, for the following reasons, this Court finds that REV is not indispensable and need not be joined as a plaintiff.

C.    REV is Not Indispensable

Based on this Court's finding that the only interests REV holds in the Robinson lease are a 50% overriding royalty interest and a contingent option to acquire Republic Partners' interests in the lease, this Court finds that REV is not an indispensable party in this civil action. First, just as in the Blackshere Litigation, entry of judgment in this civil action without REV's presence will

not prejudice REV or the parties. The plaintiffs will adequately represent REV's interest in this dispute, as the plaintiffs will presumably vigorously argue that they have title to the Robinson lease. EQT will not be prejudiced by having to defend its claimed title to the Robinson lease in REV's absence. At worst, if EQT prevails in this civil action, it may need to file a separate civil action against REV to apply the judgment to REV under principles of res judicata, but this would hardly be prejudicial. Second, any potential prejudice to the parties or REV could be avoided by fashioning a protective provision in the judgment if any prejudice becomes apparent. Third, any judgment entered without REV's presence will be adequate to resolve the parties' competing claims to title. Fourth, if this Court dismissed this civil action for non-joinder, the plaintiffs would have an adequate remedy in the parallel state litigation, but this factor does not weigh heavily in favor of dismissal.[1] Further, it is significant that the Fourth Circuit concluded in the Blackshere Litigation that REV was not an indispensable party based on its overriding royalty interest in the Blackshere lease. Trans Energy, 743 F.3d at 901-02. This Court finds that neither the parties nor REV will be prejudiced by REV's

---

[1]This Court notes that EQT filed a parallel declaratory judgment action regarding title to the Robinson lease in the Circuit Court for Wetzel County, West Virginia prior to the plaintiffs' filing the complaint in this civil action. However, this Court is unaware of the status of the state court proceedings.

absence and, thus, REV is not an indispensable party.  This civil action will not be dismissed for non-joinder.

D.    <u>EQT's Partnership Theory</u>

EQT argues that, regardless of whether REV is itself indispensable, Trans Energy, Prima, Republic Partners, and REV were engaged in a partnership to explore and develop the Subject Leases under the AJDA.  EQT argues that this "partnership" is the real party in interest regarding the plaintiffs' claim to title of the Robinson lease because the Subject Leases are partnership property. Accordingly, EQT argues that the partnership is an indispensable party to this civil action, but that joinder is not feasible because the partnership is non-diverse based on REV's citizenship.

"[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458, 461 (1980).  Where partners file suit in their own names to enforce the partnership's rights, the partnership is the real party in interest and must be joined if feasible.  <u>See</u> <u>Cunningham v. BHP Petroleum Great Britain PLC</u>, 427 F.3d 1238, 1241-42, 1244 (10th Cir. 2005) (approving district court's determination that the real party in interest was the plaintiffs' partnership, that the partnership was indispensable, and that joinder was not feasible because the partnership was non-diverse).  However, no partnership exists here.

First, the AJDA did not create a partnership.  Under West Virginia law, "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership."  W. Va. Code § 47B-2-2(a).  To determine whether a partnership has been created, courts must apply the following rules:

> (1) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.
>
> (2) The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in the property from which the returns are derived.
>
> (3) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment[] [of some unrelated obligation to the person]. . . .

Id. § 47B-2-2(c).

Under the AJDA, the plaintiffs agreed that Republic Partners, and subsequently REV, would provide services in the form of exploration and development of the Subject Leases.  In exchange, Trans Energy and Prima would convey to Republic Partners and REV certain interests in the Subject Leases.  Trans Energy and Prima conveyed to Republic Partners working interests and net revenue interests in the Subject Leases and conveyed to REV overriding royalty interests in certain of the Subject Leases.  The plaintiffs and REV's interests in the Subject Leases constitute tenancies in

common as to each lease, and each lease which provides for a
payment of a portion of revenues generated from production on each
lease.   There is no provision for the sharing of profits or losses
in the AJDA.   Nor are there provisions creating a management or
business structure.   While EQT argues that the plaintiffs have
pooled their resources and expertise into developing the Subject
Leases under the AJDA, under West Virginia Code § 47B-2-2(c), that
arrangement is not sufficient to create a partnership because it
does not provide for the co-ownership of a business in which the
parties share management authority and profits and losses.   See
Armor v. Lantz, 535 S.E.2d 737, 743-45 (W. Va. 2000) (examining
precedent providing that revenue sharing without more does not
create a joint venture); Bowers v. Wurzburg, 528 S.E.2d 475, 484-85
(W. Va. 1999) (concluding that "the mere existence" of an agreement
between a landlord and tenant-store wherein the tenant-store would
pay the landlord two percent of its gross sales along with rent
does not "automatically create[] a joint venture"); Kerns v. Slider
Augering & Welding, Inc., 505 S.E.2d 611, 619 (W. Va. 1997)
(concluding that mining company conducting operations for another
firm and paying that firm "a per-ton price for the coal extracted"
did not constitute an agreement to share profits and losses to
create a joint venture).

    Second, the plaintiffs and REV are not engaged in an implied
mining partnership.   Under West Virginia law, a mining partnership

is formed "where tenants in common of . . . [mineral] leases . . .
actually engage in working the same, and share, according to the
interest of each, the profit and loss." Childers v. Neely, 34 S.E.
828, 829 (W. Va. 1899) (emphasis added). Thus, for a mining
partnership to form: (1) the parties must be "tenants in common or
joint tenants of a[] [mineral] lease," Valentine v. Sugar Rock,
Inc., 766 S.E.2d 785, 796 (W. Va. 2014) (internal quotation marks
omitted); (2) the parties must have actually engaged in cooperative
work on the ground "for the purpose of extracting minerals" from
the mineral lease, id. at 797; and (3) the parties must "share,
according to the interest of each, the profit and loss." Childers,
34 S.E. at 829; see also Kerns, 505 S.E.2d at 619 (concluding that
mining company conducting operations for another firm and paying
that firm "a per-ton price for the coal extracted" did not
constitute an agreement to share profits and losses to create a
joint venture). Because co-ownership of the subject mineral rights
is imperative, a mining partnership exists on a lease-by-lease
basis according to the particular lease being worked. See
Valentine, 766 S.E.2d at 793-95 (explaining that it is the shared
ownership and use of a particular mineral lease between persons
that creates a mining partnership).

The plaintiffs and REV are co-tenants in the Robinson lease,
but they do not share profits derived from production. All of the
plaintiffs' interests are in the revenue from production on the

18

lease, and do not provide for profit and loss sharing. While Republic Partners must bear the cost of its own operations in exploring and developing the leases, that does not constitute profit and loss sharing because only Republic Partners bears those costs. But even if this constitutes a share of losses, Republic Partners does not share in profits, but only revenue. Further, even if a partnership exists as to the plaintiffs, REV would not be a partner because REV's overriding royalty interest is a passive interest in the Robinson lease, as it is a right only to a share of the revenue from production.

Third, even if a partnership exists and REV is a partner, the hypothetical partnership would have no interest in the Robinson lease. Under the West Virginia Code §§ 47B-2-3 and 47B-2-4, the Subject Leases would not be partnership property because they are not held in the hypothetical partnership's name or in the name of one of the hypothetical partners in their capacity as a partner. See W. Va. Code § 47B-2-4(a). Nevertheless, EQT argues that Trans Energy and Prima contributed the Subject Leases under the AJDA to the hypothetical partnership. However, the Subject Leases were not contributed to a common account and are not held in the name of a separate entity. Rather, the plaintiffs and REV each hold interests in the Subject Leases in their own names, and the AJDA simply provided for the exchange of those interests in consideration of work done to explore and develop the leases.

19

Assuming that the hypothetical partnership is a mining partnership, that partnership could not possibly hold title to the Subject Leases as partnership property. Under West Virginia law, a mining partnership is a legal fiction and the partnership does not exist as a separate entity. <u>Valentine</u>, 766 S.E.2d at 793-95. Further, an essential element to implying a mining partnership is that the partners hold title in a mineral lease as co-tenants, which precludes any separate entity from holding title to that mineral lease. <u>Id.</u> at 796. Here, title to the Robinson lease is in the name of Trans Energy and Prima, with working and net revenue interests in Republic Partners' name and an overriding royalty interest in REV's name. Thus, any implied partnership would not have an interest in the Robinson lease.

Further, any hypothetical partnership would not be an indispensable party to this civil action. Any interest that a hypothetical partnership, mining or general, would have in this litigation would be fully vindicated by the plaintiffs who actually hold interests in the Robinson lease. Thus, any hypothetical partnership would not be prejudiced by non-joinder. The plaintiffs would not be prejudiced because they may fully litigate their personal claims to title regardless of the hypothetical partnership's presence. EQT would not be prejudiced because <u>res judicata</u> would bind any hypothetical partnership and its partners to the judgment in this civil action, regardless of whether EQT

20

prevails.  Thus, any hypothetical partnership that may exist would not be an indispensable party to this civil action.

E.  <u>EQT's Alter Ego Theory</u>

Finally, EQT argues that this Court should "pierce the corporate veil" between Republic Partners and REV such that REV's citizenship should be imputed to Republic Partners because REV and Republic Partners are alter egos of each other.  Specifically, EQT argues that REV and Republic Partners are alter egos because they share the same office, they have the same manager, they have no employees, neither observes corporate formalities, and REV is capitalized with assets contributed by Republic Partners.  It is unclear whether EQT is arguing that REV is the alter ego of Republic Partners as its parent entity, or that this Court should disregard the distinction between REV and Republic Partners as sibling entities of a larger conglomerate.  Thus, this Court will consider both theories, but must first unravel the relationship between REV and Republic Partners.

Republic Partners and REV are part of a network of entities operated by Republic Energy Operating, LLC ("REO").  ECF No. 104-2 at 3-5.  REO holds no oil or gas assets but operates several holding entities that do hold oil and gas assets.  <u>Id.</u>  These holding entities include Republic Partners and REV.  <u>Id.</u>  Most or all of the employees in this network are employed by REO and not by the holding entities.  <u>Id.</u> at 6-7.  Republic Partners, REV, and

several other related entities share office space that is leased by REO.  <u>Id.</u> at 8-10.  REO provides all workplace infrastructure and supplies there.  <u>Id.</u> at 9-10.

Republic Partners' general and limited partners include several natural persons, ECF No. 104-9 at 6-8, and one of its managers is John Swanson, <u>id.</u> at 1, who is also the President of REO.  ECF No. 104-11.  REV's initial members were Republic Partners and Energy Trust Partners ("ETP").  ECF No. 104-2 at 14.  Republic Partners contributed its interests in certain of the Subject Leases as discussed above, <u>id.</u> at 15-16; ECF No. 104-5 at 4-6; ECF No. 106-8 at 23, and ETP contributed cash.  ECF No. 104-2 at 15-16. Wells Fargo and Company, Inc. later became a member after making a cash contribution.  <u>Id.</u> at 16.  REO is the sole manager of REV. ECF No. 104-11.  It is unclear whether Republic Partners is the controlling member of REV.  Based on these relationships, EQT's alter ego argument fails.

First, REV is not an alter ego of Republic Partners as its subsidiary.  Showing that a subsidiary is the alter ego of its parent company "is not easily proved and the burden of proof is on a party soliciting a court to disregard a corporate structure." <u>S. Elec. Supply Co. v. Raleigh Cnty. Nat'l Bank</u>, 320 S.E.2d 515, 522 (W. Va. 1984).  Some of the United States Courts of Appeals have applied corporate veil-piercing to impute a subsidiary's citizenship to its parent company to defeat diversity jurisdiction.

See, e.g., Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 164 (5th Cir. 1998). When analyzing whether to pierce the corporate veil, West Virginia requires courts to engage in a case-by-case analysis, "with particular attention to factual details." Raleigh Cnty. Nat'l Bank, 320 S.E.2d at 523. Specifically, courts should consider: (1) any "inadequacy of capital structures;" (2) "whether personal and corporate funds have been commingled without regard to corporate form by a sole shareholder;" (3) "whether two corporations have commingled their funds so that their accounts are interchangeable;" (4) "whether they have failed to follow corporate formalities, siphoning funds from one corporation to another without regard to harm caused [to] either entity, or failed to keep separate records;" (5) whether there is "total control and dominance of one corporation by another or a shareholder;" (6) whether one company is "a dummy corporation with no business activity or purpose;" (7) whether there is a "violation of law or public policy;" (8) whether there is "a unity of interest and ownership that causes one party or entity to be indistinguishable from another;" and (9) whether there are "common shareholders, common officers and employees, and common facilities." Id. Finally, evidence related to these factors must be "analyzed in conjunction with evidence that a corporation attempted to use its corporate structure to perpetrate a fraud or

do grave injustice on an innocent third party seeking to 'pierce the veil.'" Id. (internal citations omitted).

This Court finds that REV is not an alter ego of Republic Partners. The evidence indicates that REV is adequately capitalized, as it holds interests in several oil and gas leases among other assets. There is also no evidence that Republic Partners and REV have commingled funds. EQT argues that Republic Partners' contribution of its interests in certain of the Subject Leases to REV constitutes commingling of funds, however, Republic Partners actually transferred those assets to REV, and they do not share ownership or use of those assets. EQT argues that neither entity followed corporate formalities because they failed to keep minutes at non-annual meetings and the minutes for annual meetings are sparse. While this may not be an ideal practice, it is hardly in disregard of corporate formalities to a degree that would warrant veil-piercing, as the record indicates that no actions were taken without express authorization by all partners and members. See ECF No. 104-9. Republic Partners has an ownership interest in REV as a member, but there is no evidence that Republic Partners totally controls or dominates REV's affairs. The evidence shows that REV is not a dummy entity, but that it actually holds oil and gas assets that are actively being explored and developed. This Court finds no violation of law or public policy here. There is no evidence that Republic Partners and REV have a unity of interest

24

that makes them indistinguishable, as two of REV's members are entities that are unrelated to Republic Partners. While Republic Partners and REV share office space and Swanson as an officer, this factor has very little weight and no other factor weighs in favor of finding an alter ego relationship. Thus, this Court finds that REV is not an alter ego of Republic Partners.

Second, REV's citizenship may not be imputed to REV as a sibling entity under the veil-piercing doctrine. Some Courts of Appeals have applied veil-piercing to impute a subsidiary's citizenship to its parent entity. See Nauru Phosphate Royalties, 138 F.3d at 164 (concluding that a subsidiary's citizenship may be attributed to its parent company if it is the alter ego of the parent company and "the subsidiary's wrongful conduct is at issue"); Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 61-63 (1st Cir.), cert. denied, 510 U.S. 823 (1993) (concluding that "the separate corporate identities of a parent and subsidiary should be honored when determining either one's principal place of business" so long as "there is no evidence that the integrity of the corporate form has been violated"); Danjaq, S.A. v. Pathe Commc'ns Corp., 979 F.2d 772, 774-76 (9th Cir. 1992) (suggesting that a subsidiary's citizenship may be imputed to its parent company where the subsidiary is the parent's alter ego). Other Courts of Appeals have suggested that a parent entity's citizenship may be imputed to its subsidiary where the subsidiary is the alter

ego of the parent. <u>See</u> <u>Shell Rocky Mtn. Prod. v. Ultra Res., Inc.</u>, 415 F.3d 1158, 1163 (10th Cir. 2005); <u>Schwartz v. Elec. Data Sys., Inc.</u>, 913 F.2d 279, 283-84 (6th Cir. 1990). The District of Columbia Circuit has completely rejected the use of veil-piercing in determining the citizenship of a corporate party. <u>See</u> <u>Pyramid Sec. Ltd. v. IB Resolution, Inc.</u>, 924 F.2d 1114, 1120 (D.C. Cir.), <u>cert. denied</u>, 502 U.S. 822 (1991) (concluding that 28 U.S.C. § 1332 does not support the application of veil-piercing to determinations of corporate citizenship). The Fourth Circuit has not weighed in on this issue, but district courts within the circuit have recognized the application of veil-piercing to defeat diversity jurisdiction. <u>See, e.g.</u>, <u>Mancor Indus., Inc. v. Tri-Cities Power Auth.</u>, No. 5:08CV278, 2008 WL 5068582, *5 (S.D. W. Va. Nov. 24, 2008) (recognizing that veil-piercing has been applied to defeat diversity jurisdiction but not to expand jurisdiction). <u>But see</u> <u>Maday v. Toll Bros. Inc.</u>, 72 F. Supp. 2d 599, 605-06 (E.D. Va. 1999) (noting that the application of veil-piercing to defeat jurisdiction "has long [been] moribund").

Regardless of the dissonance among the Courts of Appeals, there is no authority for applying veil-piercing to sibling entities to impute their citizenships to each other to defeat diversity jurisdiction. Similarly, there is no authority for applying veil-piercing generally to sibling entities. The doctrine exists to hold the person controlling the corporation liable for

the corporation's wrongful acts where the "corporation is so organized and controlled as to be a mere adjunct or instrumentality of the [controlling shareholder]." S. States Coop., Inc. v. Dailey, 280 S.E.2d 821, 827 (W. Va. 1981); see also S. Elec. Supply Co. v. Raleigh Cnty. Nat'l Bank, 320 S.E.2d 515, 522 (W. Va. 1984) (concluding that a parent corporation may be held "liable for behavior of another corporation within its total control"). The doctrine does not exist to treat sibling entities as one. Thus, veil-piercing cannot be applied to Republic Partners and REV as sibling entities, and REV's citizenship will not be imputed to Republic Partners.

## V.  Conclusion

For the foregoing reasons, this Court finds that Republic Energy Ventures, LLC is not an indispensable party to this civil action and need not be joined as a plaintiff. Thus, this Court maintains subject matter jurisdiction under 28 U.S.C. § 1332. Accordingly, the defendant's motion to dismiss for lack of subject matter jurisdiction and failure to join an indispensable party (ECF No. 104) is DENIED. This Court will enter a separate order scheduling a status and scheduling conference such that this Court may consider an appropriate scheduling order for this civil action.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:     June 7, 2016


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE